The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.



**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 01:40 PM April 23, 2020**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| PHILLIP CHRISTOPHER COLELLA, | ) | CASE NO. 19-41358 |
| | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtor. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

## I. INTRODUCTION

Now before the court is the objection to confirmation by the Deanna L Colella Living Trust (the "Trust") and Deanna L. Marchionda ("Marchionda") (collectively "Creditors"). The chapter 13 trustee ("Trustee") also filed an objection to confirmation, which has apparently been resolved, although an agreed order has not yet been submitted. (Ex. 1 to Debtor's Br. at ¶ 24, ECF No. 38; Debtor's Br. at 14-15.) Debtor's objections to the claims of the Trust and Marchionda are also pending. The matters are interrelated, involving obligations in a separation agreement (the "Separation Agreement") in Marchionda and Debtor's marriage dissolution. The court held a non-evidentiary hearing on February 6, 2020, after which a briefing schedule was ordered. The matter has been fully briefed and is ready for ruling.

## II. JURISDICTION

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334 and the

general order of reference issued by the United States District Court for the Northern District of Ohio. General Order 2012-7. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (I), and (L), and the court has authority to enter final orders. Pursuant to 28 U.S.C. §§ 1408 and 1409, venue in this court is proper. This opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

### III. BACKGROUND

Marchionda is Debtor's former spouse. Marchionda and Debtor have two children, ages 13 and 15. (Debtor's Br. at 2.) As part of their marriage dissolution, Debtor and Marchionda entered into the Separation Agreement, which was approved by the Mahoning County Domestic Relations Court (the "State Court") on November 25, 2014. (Ex. A to Creditors' Br. at ¶¶ 6-7, ECF No. 37-1.) The primary dispute in this contested matter involves two separate obligations stemming from the Separation Agreement: (i) Debtor's obligation to maintain a variable universal life ("VUL") policy for the benefit of his and Marchionda's children (the "VUL Obligation"); and (ii) Debtor's obligation to assume and refinance a deficiency balance owed to Fifth Third Bank as a result of the sale of Debtor and Marchionda's marital home (the "Fifth Third Bank Obligation").

**A. The VUL Obligation**

Section 2 of the Separation Agreement, labeled "Division of Property," establishes the VUL Obligation. That section provides in relevant part:

> Pension and/or Retirement Accounts: The Deanna Colella Living Trust is the owner of two (2) separate variable universal life policies with Deanna Colella being the insured on one policy and Phillip Colella being the insured on the second policy.
>
> The policy for Deanna Colella has approximately $30,000.00 in cash value. The policy for Phillip Colella has approximately $25,000.00 in cash value.
>
> Each party agrees that the Deanna Colella Living Trust shall remain the owner and beneficiary of both policies at all times unless mutually agreed upon and in writing by both parties.
>
> Phillip Colella shall be permitted to withdraw or borrow cash value and allocate investments in the sub accounts on the policy for which he is the insured so long as the policy will not lapse, nor the

---

[1] Hereinafter, unless otherwise indicated, any reference to a section ("§" or "section") refers to a section in Title 11 of the United States Code (the "Bankruptcy Code"), and any reference to a "Rule" refers to a Federal Rule of Bankruptcy Procedure.

2

> death benefit will be affected. Wife/Trustee agrees not to
> withdraw, borrow, or reallocate sub accounts regarding the cash
> value.
>
> Each party agrees to continue to maintain their respective policy in
> full force and effect and will maintain the current death benefits,
> and each party shall be responsible for the respective premiums on
> the respective policies for which he/she is insured.
>
> The parties further agree that the VUL's for [the parties' minor
> children] shall remain intact. The parties shall split equally the
> payment of the premiums. The parties agree that the Trust shall
> remain the owner and beneficiary of those respective policies
> unless otherwise agreed upon in writing by both parties.

(Ex. B to Creditors' Br. at 2-3.) The Trust, which was established for the benefit of Marchionda and Debtor's children, is the owner and beneficiary of the VUL policies. (Id; see also Ex. A to Creditors' Br. at ¶¶ 13, 16; Ex. C to Creditors' Br.) Under the Separation Agreement, Debtor was required to maintain the value of his VUL policy, its death benefits, and premiums. (Ex. B to Creditors' Br. at 2-3.) The total death benefit of Debtor's VUL policy was $4 million, and Debtor's premiums were roughly $2,700 per month. (Ex. 1 to Debtor's Br. at ¶ 11.)

Debtor stopped making payments on the VUL Obligation and allowed the cash value of the policies to diminish. (Ex. A to Creditors' Br. at ¶ 17.) Marchionda alleges that the total value of the missed premium payments and subsequent diminished value of the VUL policies equals $81,500. (Id. at ¶ 18.) Debtor claims that, once the cash value of his VUL policy is gone, he cannot afford the premiums. (Ex. 1 to Debtor's Br. at ¶ 15.) Debtor also claims that he obtained a separate, 15-year term life insurance policy with a $1 million death benefit, naming his children as the beneficiaries. (Id. at ¶ 16.)

### B. The Fifth Third Bank Obligation

Section 3 of the Separation Agreement, labeled "Debts," establishes the Fifth Third Bank Obligation, and provides in relevant part:

> The parties are jointly liable on the unsecured deficiency balance
> as a result of a short sale regarding the Fifth Third mortgage on
> their previous residence. Husband shall be responsible for said
> debt in the approximate amount of $100,000.00, and shall hold
> Wife harmless in connection with same commencing October 10,
> 2014 and thereafter. Husband shall make all monthly payments.
> Husband shall make best efforts to refinance said debt within three
> (3) years of divorce.

(Ex. B to Creditors' Br. at 4-5.) In that same section of the Separation Agreement, the parties also agreed that Debtor would be responsible for, and hold Marchionda harmless on, all

3

obligations pertaining to a timeshare in Myrtle Beach in which he and Marchionda had an interest (the "Myrtle Beach Obligation"). (Id.)

Debtor failed to stay current on the Fifth Third Bank Obligation, resulting in Marchionda filing motions for contempt in the State Court. (Ex. A to Creditors' Br. at ¶ 19.) Despite not staying current on the Fifth Third Bank Obligation, Debtor purchased a home in April of 2018, with a value of $420,000 listed on his Schedule A/B. (Ex. D to Creditors' Br. at 1.) As of the petition date, he owed $401,696 on that property. (Id. at 2.) Marchionda claims that she did not initially pursue or receive spousal support in lieu of Debtor taking on the Fifth Third Bank Obligation. (Ex. A to Creditors' Br. at ¶ 11.)

### C. Child Support and Spousal Support

Section 5 of the Separation Agreement details the allocation of parental rights and support between Debtor and Marchionda. Under the Separation Agreement, Debtor is required to pay child support, his children's health insurance, and a portion of their private school tuition and expenses. (Ex. 1 to Debtor's Br. at ¶ 19; see also Ex. B to Creditors' Br. at 5-12.) Debtor pays $1,654 per month to Marchionda in child support and believes he is current on this obligation. (Ex. 1 to Debtor's Br. at ¶ 19.) However, Marchionda claims that Debtor has failed to stay current on his obligation to pay for his children's tuition, school lunches, insurance payments, and medical bills. (Ex. A to Creditors' Br. at ¶ 21.)

The Separation Agreement did not initially award spousal support to Marchionda. Section 8 of the Separation Agreement, titled "Spousal Support," provides:

> With respect to spousal support, all factors have been considered in Ohio Revised Code Sections 3105.18, 3105.171, and other related Ohio Statutes, and in consideration of same, the parties agree that neither shall pay spousal support to the other.
>
> The Court retains jurisdiction to modify spousal support upon the filing of bankruptcy of either party or upon a Motion to Modify Child Support filed within three years by either party.

(Ex. B. to Creditors' Br. at 13.) Marchionda eventually obtained a post-decree award of spousal support of $1,500 per month for 27 months, which ended in June of 2019. (Ex. 1 to Debtor's Br. at ¶ 20.) The State Court expressly did not reserve jurisdiction to further modify Marchionda's support, meaning no future modifications or awards of spousal support would be permitted. (Ex. 3 to Debtor's Br. at 7.)

### D. Procedural Background

Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on July 24, 2019, and listed Creditors as general unsecured creditors on his Schedule F. Debtor filed his chapter 13 plan on August 7. On October 1, Creditors filed an objection to confirmation, asserting that they should be treated as priority creditors.

4

On October 2, Marchionda filed proof of claim #11 ("Claim 11") in the amount of $72,000, and the Trust filed proof of claim #12 ("Claim 12") (collectively, the "Claims") in the amount of $81,500. The Claims were filed as priority claims pursuant to § 507(a)(1)(A)-(B), and they are based on the Separation Agreement. Claim 11 arises from the Fifth Third Bank Obligation and Claim 12 is based on missed premium payments and the diminished cash value of the VULs.

On October 8, Trustee filed an objection to confirmation, contending, among other things, that Debtor has failed to object to Creditors' Claims. If the Claims are allowed, Trustee argues, then the plan is no longer feasible. On October 14, Debtor objected to the Claims, arguing that they are not domestic support obligations ("DSOs") and are therefore not entitled to priority. Creditors responded to Debtor's objections on November 14.

## IV. LAW & ANALYSIS

### A. Debtor's Procedural Objection to the Claims

Debtor correctly notes that the Claims, despite being based on debts established by the Separation Agreement, fail to contain any supporting documentation. See Rule 3001(c)(1) ("when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim."). Debtor also points out that Creditors do not explain the absence of such documentation. Debtor seeks to disallow the Claims on this basis.

A creditor's failure to file a proof of claim in accordance with the Bankruptcy Rules does not mandate disallowance but results in loss of its prima facie validity. B-Line, LLC v. Wingerter (In re Wingerter), 594 F.3d 931, 941 (6th Cir. 2010) (citation omitted); In re Gorman, 495 B.R. 823, 832 (Bankr. E.D. Tenn. 2013); Rule 3001(f).[2] Therefore, the court cannot disallow the Claims for lack of documentation. However, having determined that the Claims fail to comply with Rule 3001(c), the court finds that the Claims are not entitled to any special evidentiary effect. See Gorman, 495 B.R. at 832. The court will now consider Debtor's substantive objections to the Claims.

### B. Whether the Claims Are for Domestic Support Obligations

Section 523(a)(5) provides an exception from discharge for any debt for a DSO. § 523(a)(5). A related provision, § 523(a)(15), excepts from discharge any debt "to a spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement . . . ." § 523(a)(15).

Broadly speaking, "[s]ections 523(a)(5) and (a)(15) operate to provide greater protection

---

[2] Section 502(b)(1)-(9) sets forth the grounds on which a court may disallow a claim. Lack of supporting documentation is not one of them. See § 502(b)(1)-(9); see also Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 443, 449 (2007).

5

for alimony, maintenance, and support obligations owing to a spouse, former spouse, or child of a debtor in bankruptcy." In re Thomas, 511 B.R. 89, 94 (B.A.P. 6th Cir. 2014) (citation, quotation marks, and alteration omitted). Such debts cannot be discharged in chapter 7, chapter 11, and chapter 12 cases. Id. In chapter 13 cases, DSOs under § 523(a)(5) are not dischargeable; however, debts under § 523(a)(15) *are* dischargeable. 4 COLLIER ON BANKRUPTCY ¶ 523.23 (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. rev. 2020) (citing § 1328(a)). Indeed, chapter 13's broader discharge was designed by Congress to incentivize debtors to complete performance under a confirmed plan. Pa. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 563 (1990). Furthermore, unsecured claims for DSOs are priority claims under § 507(a)(1)(A) that must be paid in full through a debtor's plan. § 1322(a)(2).

Debtor argues that the Claims are not DSOs but are § 523(a)(15) obligations. (Debtor's Br. at 3.) Creditors contend that their Claims are in the nature of support and are therefore nondischargeable pursuant to § 523(a)(5). (Creditors' Br. at 5.) At bottom, the dispute in this matter revolves around whether the Claims are for DSOs. If so, then the Claims: (i) are excepted from Debtor's chapter 13 discharge pursuant to § 523(a)(5); (ii) are entitled to priority under § 507(a)(1)(A); and (iii) must be paid in full through Debtor's plan pursuant to § 1322(a)(2).

But before reaching the merits, an additional procedural issue must be addressed. A proceeding to determine the dischargeability of a debt generally requires the filing of an adversary complaint. Rule 7001(6); Rule 7003. In this case, the chapter 13 notice provided a November 12, 2019 deadline to file a dischargeability complaint. (ECF No. 5.) On October 16, 2019, Creditors moved to extend this deadline to January 5, 2020, which the court granted. (ECF No. 27.) But Creditors never filed an adversary complaint. In his brief, Debtor states that he did not consent to an extension of the November 12 deadline. (Debtor's Br. at 3.) However, a complaint to determine the dischargeability of a debt pursuant to § 523(a)(5) or (a)(15), among other subsections, may be filed "at any time." Rule 4007(b). Therefore, it makes no difference that Debtor did not consent to the extension.

On a related note, the court finds that Debtor has waived any right to protest Creditors' failure to file an adversary proceeding by: (i) failing to object to Creditors' use of a motion instead of an adversary proceeding; and (ii) conceding that the Claims fall within § 523(a)(15). See Cogliano v. Anderson (In re Cogliano), 355 B.R. 792, 806 (B.A.P. 9th Cir. 2006) (noting that parties may waive adversary proceeding requirement); see, e.g., In re Hayden, 477 B.R. 260, 264, n. 3 (Bankr. N.D. Ga. 2012) (finding that debtor waived right to insist on adversary proceeding by appearing and litigating underlying matter without raising the procedural issue).

Turning to the merits, § 101(14A) defines a "domestic support obligation" as:

> [1] a debt . . . that is [2] owed to or recoverable by . . . a . . . former spouse, or child of the debtor or such child's parent . . . [3] in the nature of alimony, maintenance or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated; [4] established . . . by . . . a separation agreement, divorce decree, or property settlement agreement . . . [or by] an order of a court of

6

record . . . .

§ 101(14A).

Debtor does not dispute that the Claims are based on debts that accrued prior to the petition date and were established by the Separation Agreement. The point of contention is whether the debts are in the nature of alimony, maintenance, or support.

The Sixth Circuit has created a four-part test for determining whether an obligation constitutes support:

> First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.

Fitzgerald v. Fitzgerald (In re Fitzgerald), 9 F.3d 517, 520 (6th Cir. 1993) (citing Long v. Calhoun (In re Calhoun), 715 F.2d 1103, 1109-10 (6th Cir. 1983)).

The Sixth Circuit has further instructed courts to:

> look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.

Rugiero v. DiNardo (In re Rugiero), 502 F. App'x 436, 439 (6th Cir. 2012) (quoting Sorah v. Sorah (In re Sorah), 163 F.3d 397, 401 (6th Cir. 1998)).

### 1. Claim 11 – The Fifth Third Bank Obligation

The court agrees with Debtor that the Fifth Third Bank Obligation is not a DSO. First, the Fifth Third Bank Obligation does not bear the traditional hallmarks of a support obligation. Section 8 of the Separation Agreement is labeled "Spousal Support," and the Fifth Third Bank Obligation is not located in this section. (Ex. B. to Creditors' Br. at 13.) Nor is it contained in Section 5 of the Separation Agreement, which details the allocation of parental rights and child support. (Id. at 5-10.) Instead, it is found in Section 3 of the Separation Agreement, labeled "Debts," along with the Myrtle Beach Obligation. (Id. at 4-5; see also Ex. 1 to Debtor's Br. at ¶¶ 9, 18.) Second, Debtor is required to pay Fifth Third Bank, not Marchionda. Third, the

7

payments are not contingent upon events such as death, remarriage, or eligibility for Social Security benefits. See Sorah, 163 F.3d at 401. Marchionda has failed to point to a single provision in the Separation Agreement bolstering her contention that the Fifth Third Bank Obligation was intended to be a support obligation.

Fourth, the Fifth Third Bank Obligation does not have the effect of actually providing support for Marchionda or the children. Neither Marchionda nor the children own or reside in the property subject to the Fifth Third Bank Obligation, and Marchionda has not provided any evidence that the obligation was necessary to meet her or the children's needs. (Ex. 1 to Debtor's Br. at ¶¶ 9, 18.) Furthermore, Marchionda's argument that the Fifth Third Bank Obligation is necessary for support is belied by the fact that: (i) Marchionda sought and obtained a post-decree award of spousal support; (ii) the State Court limited the amount and duration of the award to $1,500 per month for 27 months; and (iii) the State Court expressly did not reserve jurisdiction to further modify or award spousal support, effectively closing the door on the issue of spousal support. (See Ex. 3 to Debtor's Br. at 7.)

Marchionda argues that the Fifth Third Bank Obligation had the same effect as spousal support because: (i) it protected her from possible collection actions; (ii) it protected her credit; and (iii) it protected her employment because she was working in the financial services industry at the time of the Separation Agreement. (Creditors' Br. at 8.) But the exact same argument could be made about the Myrtle Beach Obligation—which, of course, is not a DSO. The Fifth Third Obligation, like the Myrtle Beach Obligation, is more akin to a debt settlement pursuant to § 523(a)(15).[3] Thus, the court finds that the Fifth Third Bank Obligation is not a DSO.

### 2. Claim 12 – The VUL Obligation

The VUL Obligation also does not bear the traditional hallmarks of a support obligation. It is not found in the provisions of the Separation Agreement governing child support or spousal support. It is located in Section 2 of the Separation Agreement, which details the parties' agreement regarding the division of certain property. (Ex. B. to Creditors' Br. at 2-4.) Furthermore, the VUL Obligation is payable not to Marchionda or the children, but to TransAmerica Premier Life Insurance Co.,[4] and there is no indication in the Separation Agreement that the obligation is contingent on events such as death, remarriage, or eligibility for Social Security Benefits. (Debtor's Br. at 13; Ex. 1 to Debtor's Br., at ¶¶ 10, 11; Ex. B to Creditors' Br. at 2-4.)

On the other hand, the Trust, which was established for the benefit of Debtor and Marchionda's children, is the owner and beneficiary of the VUL policies. (Ex. B to Creditors'

---

[3] Marchionda argues that the Fifth Third Obligation is a debt pursuant to §§ 523(a)(5) *and* 523(a)(15). (Creditors' Br. at 5, 6, 10.) Debtor concedes that the debt falls within § 523(a)(15). (Debtor's Br. at 8.) But again, it makes no difference here, since debts encompassed by § 523(a)(15) are dischargeable in chapter 13 cases pursuant to § 1328(a).

[4] This Sorah factor - whether or not the obligation involves a direct payment to the former spouse - does not really fit well with life insurance since payments would always be to the insurer.

Br. at 2-3; Ex. A to Creditors' Br. at ¶¶ 13, 16; Ex. C to Creditors' Br.).[5] And several courts, albeit not in the Sixth Circuit, have held that an obligation made pursuant to a divorce decree to maintain a life insurance policy for the benefit of children may constitute a DSO. See In re Toronto, No. 15-10663, 2016 Bankr. LEXIS 3257, at* 21, n. 25 (Bankr. D. N.H. Sept. 2, 2016) (collecting cases).

In this case, Debtor argues that the VUL Obligation was not intended to be a support obligation because, under the Separation Agreement, Debtor already pays $1,654 per month in child support and takes care of a portion of his children's tuition, insurance, and other expenses. Debtor also argues that the VUL Obligation is unreasonably excessive because the policy is not a typical life insurance policy. Indeed, the VUL policy, unlike most life insurance policies, has investment features. (Ex. 1 to Debtor's Br. at ¶¶ 10, 11; Debtor's Br. at 11.) The policy also has a whopping $4 million death benefit, and Debtor's premiums were approximately $2,700 per month. (Id.) The premiums exceed Debtor's $2,688 monthly mortgage expense and dwarf Debtor's proposed plan payment of $1,000 per month. (ECF Nos. 8, 9.)[6] Debtor plainly cannot afford the premiums, which is why he obtained a separate, 15-year term life insurance policy with a $1 million death benefit, naming his children as the beneficiaries. (See id; see also Ex. 1 to Debtor's Br. at ¶¶ 12, 15, 16.) Debtor pays $120 per month for this separate policy. (Debtor's Br. at 11.)

Because Debtor already pays child support and other expenses for his children, and because Debtor obtained the separate (and more modest) life insurance policy, which still provides a generous death benefit, the VUL Obligation does not constitute necessary support. And even if it did, the court agrees with Debtor that the VUL Obligation is unreasonably excessive. See Calhoun, 715 F.2d at 1109-10. The problem, however, is that Debtor has no obligation to maintain the separate life insurance policy. But the parties have failed to offer any alternatives on the VUL Obligation, such as whether the investment portion could be eliminated or the policy benefit reduced.[7] Consequently, the court must take the VUL Obligation as a whole and therefore finds it unreasonable. Thus, the VUL Obligation is not a DSO. Instead, like the Fifth Third Bank Obligation, the VUL Obligation falls within § 523(a)(15), making it dischargeable in this chapter 13 case.[8]

### C. Disposable Income

Creditors also argue that several of Debtor's expenditures are excessive, including: (i)

---

[5] The Separation Agreement plainly states that the VUL policies are for the children. (Ex. B. to Creditors' Br. at 3.)

[6] Debtor's initial plan proposed payments of $500 per month and a 10% dividend to general unsecured creditors. (ECF No. 9.) According to Debtor, he and the Trustee have agreed that Debtor's payments will be $1,000 per month and the plan will provide a 35% dividend. (Debtor's Br. at 3.)

[7] Normally, under Calhoun, if an obligation is unreasonably excessive courts can reduce the non-dischargeability of the obligation to a reasonable amount, but this analysis is more applicable to assumptions of debt. See generally Calhoun, 715 F.2d 1103.

[8] Creditors and Debtor agree that the debt is encompassed by § 523(a)(15). (Creditors' Br. at 5, 6, 10; Debtor's Br. at 8.)

9

Debtor's $400 monthly home maintenance cost for the home Debtor purchased in 2018; and (ii) Debtor's $200 monthly pet expense, which, according to Marchionda, includes "doggy daycare." (Creditors' Br. at 5; Ex. A to Creditor's Br. at ¶ 20.) In addition, Creditors claim that Debtor has failed to list his fiancée's employment, income, and expenditures to accurately show her household contributions. (Id.) In his affidavit, Debtor states that his fiancée, who is a nurse, and her 3 children live with him. (Ex. 1 to Debtor's Br. at ¶ 21.) On average, Debtor's fiancée contributes $500 per month to the household after paying her personal expenses. (Id.) One of Debtor's fiancée's children has significant medical issues, so Debtor adopted a dog to be companion/therapy dog for the child. (Id. at ¶ 22.) Debtor states that his household expenses are reasonable and necessary for the maintenance and support of Debtor and his dependents, and, contrary to Marchionda's claim, none of Debtor's pet expenses involve "doggy daycare." (Id. at ¶ 23.)

Creditors neglect to cite any legal basis for this part of their objection, but it appears they are claiming Debtor is not contributing all of his disposable income to the plan in accordance with §§ 1322(a)(1) and 1325(b)(1)(B). If that is the case, the objection mirrors Trustee's objection to confirmation, which, according to Debtor, has been resolved, although no agreed order has been submitted. (ECF No. 22; Ex. 1 to Debtor's Br. at ¶ 24; Debtor's Br. at 14-15.) Debtor claims that Trustee's objection was consensually resolved by: (i) submitting documentation demonstrating his decreased income, his fiancée's income, and household expenses; and (ii) increasing his plan payment from $500 per month to $1,000 per month. (Debtor's Br. at 14.)

Based on Debtor's affidavit, the court finds that Debtor's monthly pet expense is reasonable and necessary. The court is also satisfied with Debtor's disclosure of his fiancée's employment, income, expenditures, and household contributions. However, Debtor has not submitted any evidence demonstrating that his $400 monthly home maintenance expense is reasonable and necessary. Debtor may have submitted documentation with Trustee, but Debtor must justify this expense with the court. Therefore, the court will allow Debtor additional time to file and serve documentation with the court pertaining to this expense and explaining why it is reasonable and necessary. Debtor shall also file and serve amended Schedules I and J, reflecting his new budget. After these items are filed, Creditors shall have seven days to file a further brief not to exceed five pages on this subject. Thereafter, Debtor shall have seven days and five pages to respond.

### D. Automatic Stay

Finally, Creditors claim that Debtor has not remained current on several of his obligations to Marchionda and their children, including school lunches, tuition, and medical bills. (Creditors' Br. at 9; Ex. A to Creditors' Br. at ¶ 21.) Creditors argue that all post-petition obligations are excepted from the automatic stay. For the reasons previously mentioned, the VUL Obligation and the Fifth Third Bank Obligation are not DSOs, and therefore the collection of these two obligations is not excepted from the automatic stay.

## V. CONCLUSION

The Fifth Third Bank Obligation and the VUL Obligation are not DSOs. Thus, Debtor's objections to the Claims will be sustained and the Claims will be reclassified and treated as general unsecured claims in Debtor's chapter 13 case. To the extent Creditors argue that Debtor is not submitting all his disposable income into the plan, the court will proceed as outlined hereinabove. The court will enter a separate order in accordance with this opinion.

**Service List**:

Melissa M. Macejko
29 E. Front Street 2nd Floor
P O Box 1497
Youngstown, OH 44501-1497

T. Robert Bricker
106 South Broad Street
Canfield, Ohio 44406

Michael A. Gallo
5048 Belmont Avenue
Youngstown, OH 44505